# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **CARMEN CAMPOS RAMOS, et al.,**<br>  **Plaintiffs**<br><br>   **v.**<br><br>**FAUSTINO ACEVEDO, et al.,**<br>  **Defendants** | **Civil No. 02-2776 (JAG)** |

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiffs, Carmen Campos-Ramos, David Santiago-Echevarría, Daisy Enid-Valedón, Angel Vélez-Rivera, and those with spouses and the Conjugal Partnership between them, filed a complaint on December 5, 2002, pursuant to 42 U.S.C. § 1983 alleging political discrimination in violation of their constitutional rights pursuant to the First and Fourteenth Amendment of the United States Constitution (**Docket No. 1**).  Claims are also raised under the Puerto Rico Constitution and Articles 1801 and 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 and 5142.

Carmen Campos-Ramos (hereafter "Campos"), David Santiago-Echevarría (hereafter "Santiago"), Daisy Enid Valedón (hereafter "Valedón") and Angel Vélez-Rivera (hereafter "Vélez")  are all employed with the Administración de Derecho al Trabajo (i.e. Right to Work Administration) (hereafter "ADT"), which is part of the Departamento del Trabajo y Recursos Humanos (i.e. Department of Work and Human Resources) of the Commonwealth of Puerto Rico. Campos is employed as an Office Systems Technician in the ADT Office in Coamo, Puerto Rico; Santiago is employed in the ADT Office in Guayama, Puerto Rico;  Valedón  is employed as Manager's Secretary in the Coamo Office; and, Vélez is employed as a Technician IV in the ADT Guayama Office.  The Complaint alleges that the employee plaintiffs are members of the New Progressive Party (hereafter "NPP") and that the defendants, who are members of the Popular Democratic Party (hereafter "PDP"), violated their right to be free from political discrimination. More particularly, the allegations brought by the employee plaintiffs are as follows: **Campos**

alleges that she was appointed to the position of Office Systems Technician I on September 1, 2000, and her probationary period was to end in February 2001, yet she was not made a regular career employee until June 6, 2002, retroactive to March 1, 2001.  Campos alleges this delay was the result of an investigation of only NPP employees and that the delay resulted in the loss of benefits that were and are available to regular employees.  Campos also alleges that her job duties were eliminated, she was not given adequate equipment and office furniture to perform her job and that she was treated differently from PDP employees.

**Valedón's** allegations are similar to Campos in that she  alleges that due to her NPP affiliation she was not made a regular employee in a timely manner, she was given inferior material and working conditions compared to those assigned to PDP employees, her duties were unreasonably increased while her compensation remained the same,  and she was not provided with special equipment (reasonable accommodation) she needed due to a medical condition.

**Santiago** alleges that he applied for the position of ADT Manager and was also eligible, but due to his NPP affiliation he was not awarded veteran status, was not interviewed and was unable to compete for the position.  Vélez's allegations are similar to Santiago's in that he alleges that he applied for the position of Auxiliary Manager of ADT and though he had occupied the position on a temporary basis and fully complied with the requisites of the same he was not selected for the Auxiliary Manager position, all due to his status as a member of the NPP.

The defendants remaining in the case[1] are Faustino Acevedo (hereafter "Acevedo"), Víctor R. Cruz-Burgos (hereafter "Cruz"), Myrna Crespo-Saavedra (hereafter "Crespo") and Jesús Roena (hereafter "Roena") and suit is brought against them in their official and individual capacities. Also named as defendants are the spouses of the foregoing and the Conjugal Partnership comprised by them.   At all times relevant to the Complaint, Acevedo was the Sub-Administrator of the ADT; Cruz was the ADT Regional Office Director of Coamo, Puerto Rico; Crespo was the

---

[1]On January 12, 2004, the Court dismissed the case against defendants Sila María Calderón, Former Governor, Commonwealth of Puerto Rico; Wilfredo Ríos, and Víctor Rivera-Hernández, Secretary , Department of Labor and Human Resources.  *See Docket No. 36.*

Director of Human Resources for ADT; and, Roena was an Assistant to María del Carmen Fuentes[2].

The Complaint seeks injunctive relief as well as compensatory and punitive damages, and attorneys' fees and costs

The Defendants move for summary judgment, the same being opposed by Plaintiffs (**Docket Nos. 51, 61, 68, 71, 73, 79, 81**). The motion was referred to the undersigned for report and recommendation (**Docket No. 75**).

## I.      Factual Background

Local Civil Rule 56(c) provides that "a party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of materials facts.  The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule." *L.Cv.R. 56(c)*.  Local Civil Rule 56(e) goes on to state that "facts contained in a supporting or opposing statement of materials facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." *L.Cv.R. 56(e)*.

Defendants' Statement of Uncontested Material Facts consists of 66 facts.  Plaintiffs filed a Statement of Facts Contesting Defendants Alleged Uncontested Material Facts and it contained 54 enumerated items (**Docket No. 61**).   These 54 items do not admit, deny or qualify the facts as submitted by Defendants nor do they correspond to the numbered facts submitted by defendants.

Plaintiffs have ignored Local Civil Rule 56 at their own peril, and their failure to comply can be grounds for judgment against them. *Mercado-Alicia v. The De Facto Tourism Employees Ass'n,* No. 03-2246, p. 7 (1st Cir. Jan. 27, 2005) (other citations omitted).  The Court does not discount the facts Plaintiffs submitted to assist the Court when considering their opposition.

---

[2]María del Carmen Fuentes is the Director of the ADT.  The body of the complaint names her as a defendant, but the caption of the complaint does not.  The record indicates that she has never been served with summons and complaint, thus, she is not considered a defendant in the case at bar.  *See Docket Nos. 2, 3, 4.*

However, Defendants abided by the local rules by admitting,  denying or qualifying them. Inasmuch as, Plaintiffs failed to comply with the Local Rules of this Court in not admitting, denying or qualifying the 66 facts submitted by Defendants,  all facts which are adequately supported by references to the record as submitted by the Defendants are deemed admitted pursuant to Local Civil Rule 56(e).  *See Mercado-Alicia v. The De Facto Tourism Employees Ass'n,* No. 03-2246 (1st Cir. Jan. 27, 2005).  Accordingly, the Court hereby sets forth the relevant facts as follows.

In November 2000 general elections were held in Puerto Rico.  The PDP won the Governor's Office and the majority of the seats in the Senate and House of Representatives. Campos, Valedón, Santiago and Vélez are all members of the NPP and are all employed with the ADT.  Campos and Valedón work at the Coamo ADT Office and Santiago and Vélez work  at the ADT Guayama Office.

The Personnel Regulations for Career Employees set forth regulations for employees on probationary status.  The regulations establish that every person who is named or promoted to occupy a permanent career position will be subject to the probationary period of the position as part of the selection process (**Docket No. 73**, Ex. 3).  The regulations provide that the probationary period will not be less than three months nor greater than one year.  *Id.*  When a person completes the probation period, a change report is generated to change the employee's status from probationary to regular.  *Crespo dep. p. 12.*  This change of status report is generated by a technician.  *Id.*  Once this is done, some reports go to payroll, and if not then it goes into the employee's personnel file.  *Id.*

**Crespo**, the Director of Human Resources for ADT testified  that when she began working at the ADT,  the Human Resources Department was "a mess".  *Id. at p. 14.*  A consultant was employed to help the ADT obtain information for the roster of employees, but the updating was difficult.  *Id. at p. 15.*   Crespo was informed by the technicians that they were finding many personnel files in which persons appeared classified as in a probationary period, beyond the period of time provided for in the regulations. .  *Id. at p. 16.*  It was discovered that the changes

in status from probationary to regular had not been made.  As a result, the ADT technicians were assigned to a task force and instructed to work on the probationary files.  *Id. at p. 17*.   When asked if there were any consequences to an employee who is made a regular employee after the expiration of the probationary period Crespo explained that no allocation of retirement benefits is deducted from the employee's pay during the time they are on probationary status.  *Id. at p. 19*.

**Carmen Campos** is an active member of the NPP.  She was appointed to the position of Office Systems Technician I, effective September 1, 2000.  She ended her probationary period in February 2001, but was not notified that her status had been changed to that of a regular employee.  *Campos dep. p. 53*.  Campos asserts that when she inquired about her employment status, she was told that the appointment was "under investigation".  *Pls.' Fact No. 2*.  Campos testified that she believes the investigation was politically based and that only NPP members were investigated.  *Campos dep. p. 54*.  Campos received her certificate of appointment or designation as a regular employee in June 2002.  *Campos dep. p. 53*.  Campos classification as a regular employee, was made retroactive to March 1, 2001 (**Docket No. 61**, Ex. 2).

Campos was initially located in the ADT Guayama Office, but later was transferred to the Coamo Office.  *Campos dep. pp. 44-45*.  During her deposition Campos testified that political discrimination occurred upon the change in administration and specifically upon the arrival of Ciprián Meléndez, Manager, Guayama Office.  Upon Ciprián Meléndez's arrival Campos was moved to a desk and her sole task was to remove from the letterhead and all official documents the word "government" and replace it with the word "Commonwealth".  *Pls.' Fact No. 6*.  This change was made pursuant to an Executive Order.  Meléndez is not a named defendant.  At the Guayama Office, Campos had no specific duties assigned and was temporarily in charge of the telephone exchange.

At some point in time Campos and some other employees were transferred to ADT Offices located at a new building in Coamo.  Reportedly, the office lacked equipment for Campos and four others employees. When Campos arrived in Coamo she was not trained and her job tasks were assigned to others. While Waleska Cartagena assigned work to the other secretaries, Magda

Jovet became the person who assigned Campos her work.  *Campos dep. p. 48.*

Campos  claims that she was politically discriminated against because as a Technician she was required to answer the phones, something not within her duties. However, the record reflects that the phone exchange duty was made when there was no receptionist available other secretaries also had to take turns answering the phones as well.

Campos also testified that when she arrived at the Coamo Office, the employees that belonged to the PDP raised an emotional barrier towards her.  *Campos dep. p. 46.*  For example, Campos testified that the employment service technicians in her area did not invite her to office celebrations, such as birthdays.  *Campos dep. p. 88.*  During her deposition Campos named these employees, but none of them are the named defendants.  *Id.*

On one occasion Cruz and Campos discussed Campo's feeling of being  left out and being treated like an outcast.  *Cruz dep. p. 17.*  The conversation took place because Cruz had been advised by a former supervisor (Ana Dilia) that Cruz took too along to deliver her secretarial work product, so Cruz visited Campos to inform her.  *Id.*  It was then when Campos told Cruz that she felt the group did not get along with her or related well to her.  *Id.*  A week later Ana Dilia, Magda Jovet and Cruz met in Cruz's office to discuss how to integrate Campos into the group.  *Id.*  It was agreed as part of the integration process or plan that everyone would try to give Campos additional work or tasks to perform.  *Id.*  It appears this is the same meeting in which Campos met with Magda Jovet and Cruz and complained to them about not having enough work assigned. *Defs.' Clarification of Pls.' Fact No. 6; Pls.' Fact No. 10.*  Cruz advised Campos to "break down the barriers" and Jovet proposed that Campos be transferred to another area, but to perform the same work.  *Campos dep. p. 50.*  Cruz rejected the proposal.  *Id.*   Campos testified that Cruz "applauded" the actions of Lilian Rodríguez (another co-worker) because she "usurps" Campos's tasks.  *Id. at p. 65.*  However, Campos never spoke or  directly complained to Cruz about her tasks being usurped.  *Id.*  Indeed, during his deposition Cruz testified that Campos never approached him to report how she felt or that she lacked work.  *Cruz dep. p. 17.*

Campos also complained that there was not enough office equipment in the Coamo

Regional Office and that the one available was not evenly distributed.  However, there appears to have been a general problem with lack of equipment at the Coamo Office.  Magda Jovet testified she had  requisitioned the office equipment and that Víctor Cruz had approved the requisitions.  In this regard, Carmen Esclara testified that Cruz treats NPP employees differently as far as equipment distribution or assignment is concerned.  *Esclara dep. pp. 41, 44.*  She explained that NPP employees with more years of service were not given equipment before PDP employees with less service.  *Id.*

At her deposition Campos testified and admitted  that she has had a tardiness problem since she started as an employee in the Coamo Office.  *Campos dep. p. 68.*  In this regards Campos admitted having met with Cruz and Magda Jovet who had instructed or advised her to improve the situation.  *Id.*

During the time period in question Campos received salary increases, the loans she requested from the AEELA and the Retirement Fund were granted and vacation requests were also approved.

Campos never complained directly to Acevedo. *Campos dep. p. 65.*  She testified that she indirectly complained to Acevedo at the time a group of secretaries wrote a letter of complaint regarding the location of the phone exchange.  Still, it is unclear if Campos was one of the persons signing the letter of complaint.  *Id.*  Campos testified that she sued Acevedo  because he was the sub-administrator and she believed "that the actions carried out by his subordinates were his responsibility" as well. *Campos dep. pp. 65-64.*   Campos further testified at her deposition that she brought a claim against Crespo  because Crespo was the Human Resources Director during the period in which her appointment process was delayed and Crespo was the one who told Campos that her appointment was "under investigation".  *Campos dep. pp. 64-65.*  Crespo does not know Campos.   In a different context, Campos testified that she sued Cruz because he has a preference for employees in the Coamo Office who are affiliated to his party.  *Id. at p. 65-66.*

**Angel Vélez** claims that he is a member of the NPP.  However, there is evidence on record indicating that at different times he told Crespo and Acevedo that he was a member of the

PDP.  During his deposition Vélez also admitted that he has visited the PDP Club or Committee's Office in Guayama.  *Vélez dep. p. 50*.

Vélez has  worked at the ADT since 1990.  He applied for the position of Assistant Manager and Manager in the Guayama Office in 1996 and 2001. He was not selected in 1996 or in 2001. However, Vélez did not contest the administrative selection process in 1996, and  only contests the selection process in 2001.

Vélez served as the Interim Assistant Manager for over a year in the Guayama Office and believed that he would be appointed to a regular career position as Assistant Manager.  During the time that he served as Interim Assistant Manager it is undisputed he received the  salary differential to which entitled.

Vélez indicated that although he was told he qualified for an interview for the Manager position, when he reported for the interview he was then told he did not qualify and that he would have to interview for the Assistant Manager position.  *Vélez dep. p. 48*.  Vélez contacted Crespo and she told him nothing else could be done.  After that Vélez did nothing with regard to the Manager position, and did not contest the selection process, nor appointment of Ciprián Meléndez to the Manager's position.  Vélez admitted he does not know Meléndez' s educational background or work experience, but indicated that Meléndez is a PDP member.  *Vélez dep. p. 50*.

The record shows that Vélez made the list of eligible applicants for the Auxiliary Manager position and was interviewed by Acevedo and Crespo.  Nonetheless he was not selected for the position.  Vélez testified that he was actually interviewed by four regional managers as well as Crespo and  Acevedo.  Acevedo, who was at the interview, did not ask him any questions.  *Vélez dep. p. 58*.  Thereafter, Vélez sent a letter to Crespo inquiring on the final grade he received on the interview and application for the Assistant Manager and Manager positions.  He followed-up with a telephone call to Crespo during which  Crespo agreed "she would let him know" how the process transpired.

Later on, Acevedo informed Vélez that he had not been selected as the Auxiliary Manager

and that Vélez would have to vacate the office he was using.  *Vélez dep. p. 58*.  Adminda Pérez was the person appointed to the Auxiliary Manager position.  Vélez admits he does not know Pérez's academic preparation work experience or her political affiliation.

Vélez also testified and claimed during his deposition that there was a hostile environment at work as a result of  personnel making comments to him and the personnel's celebration of Adminda Perez' appointment as Auxiliary Manager.   It must be noted that the individuals who celebrated Perez' designation acted in such a manner are not named defendants. *Vélez dep. pp. 51-52*.

Finally, Vélez supports his political discrimination claim against Crespo and Acevedo asserting that  during the interview process he received an "unfair" classification.  He also sued Acevedo because Acevedo participated in the selection process.  *Vélez dep. p. 69*.  As to defendant Cruz, Vélez admits he does not know him nor has he ever talked to him.

**David Santiago** is an active member of the NPP.  At the ADT offices Santiago held the position of Human Resources Technician for approximately 15 years.  In 1996, Santiago applied for the positions of Sub-Regional Manager and Manager.  He was found eligible and interviewed for the positions, but was not appointed to it.  Santiago did not contest this 1996 selection process.

In 2001,  Santiago applied once again for the position of Manager and was given a total score of 86 points in the evaluation process.   Santiago's evaluation in 1996 for the same position earned him a score of 91 points.  Santiago contends he is not satisfied with the score obtained and asserts it makes no sense because in 2001 after improving himself professionally by obtaining a master degree and taking into account the 5 points that should be awarded as a veteran, the final score was 86 points – lower than the 1996 score. *Pls.' Fact No. 19*.  Santiago testified  that the selection of the Manager position was political in nature and that prior to the final selection being made he had  heard hallway rumors that it was already known who would be selected for the position.  Santiago does not remember could not provide the names of the people who  made these comments, but none of these are the named defendants..

Santiago complained about the 2001 selection process by way of a letter dated November

5, 2001, addressed to María del Carmen Fuentes (hereafter "Fuentes") wherein he inquired why he had not been awarded or credited his veteran points and why he had not been interviewed. Fuentes referred Santiago's case to Crespo, they met, and Crespo informed Santiago of the evaluation process which entailed examination of  his file in light of active and inactive components.  *Pls.' Fact No. 20*.  Santiago again complained to Fuentes in a letter dated November 13, 2001, wherein he stated that he was being discriminated against because he was not awarded the veteran points earned,  was not interviewed for the position, and was notified of his eligibility only after someone else was chosen.

Crespo responded to  Santiago's complaints in a letter dated December 5, 2001, wherein she explained that the veteran points were already included in his 86 final score and that in accordance with the regulations of the ADT personnel he was not interviewed for the position because he was not within the top five (5) scores.

The person who evaluated Santiago's application was Milagros Cintrón. The record reflects she took into account and credited Santiago's veteran points, and those 5 points were included in the total and final score of 86 points.  However, the veterans points were not properly allocated or reflected in the  correspondence through which Santiago was informed of the results and evaluation of his application. This error was attributable to either Cintrón or the technicians who had prepared the response delivered to Santiago.

As noted above, Ciprián Meléndez was appointed to the Manager position.  Like Vélez, Santiago does not know Meléndez's educational background or work experience.  Santiago claims he was treated unjustly because of his political affiliation.  Santiago asserts that after Meléndez came into the agency, he felt segregated because Santiago would allegedly assign work to what Santiago referred to as "his people".  As previously mentioned, Meléndez is not a named defendant to this cause.

Santiago also supports his political discrimination claim against Crespo arguing that she failed to properly oversee the evaluation process to select the new Manager.  Reportedly, Santiago met with Crespo on December 13, 2001.  Prior to that time he had never spoken to her.

*Santiago dep. p. 52.*

More so, Santiago does not personally know Acevedo and has never spoken to him. *Santiago dep. p. 57.* He assumes Acevedo is affiliated with the PDP and asserts that Acevedo politically discriminated against him because Acevedo is the Deputy Administrator and Acevedo is the one who instructs to others that no NPP members is to be hired. *Id. at p. 58.* Santiago did not know what instructions Acevedo actually would give, but assumes that Acevedo gave instructions not to hire members of the NPP, but admits he has no concrete facts to supports his allegation.. *Id. at 59.* Santiago makes no allegations nor has any claim against Víctor Cruz. *Id. at p. 61.* Santiago explained that the named defendants were listed in the complaint in the order of protocol, beginning with the governor and including an Assistant to Fuentes (i.e. Jesús Roena).

**Daisy Valedón** is an active member of the NPP.   In September of 2000 she was a probationary employee as an Office Systems Administrator II. ADT notified Valedón of her appointment as a regular, career status employee on January 2002, and advised that such classification and appointment was retroactive to March, 2001.

Valedón works in the management division at the ADT Coamo Office.  Her immediate supervisor is Magda Jovet (hereafter "Jovet).  Valedón's duties include among others, those of typing, keeping Jovet's agenda, taking messages, answering telephone calls, and requisitioning materials and equipment.

The evidence on record further shows that there was a lack of equipment in the Coamo Offices, and some equipment from the Ponce Office was used, but since it was not in good condition it had to be refurbished.  New equipment was requested.  Cruz as Regional Director was responsible for fulfilling the necessities of office equipment that was lacking in Coamo.  *Pls.' Fact No. 32.* The persons responsible to follow-up the requests for equipment were  Cruz, Jovet and Valedón.  *Valedón dep. p. 19.*

Valedón testified to a litany of incidents that she described as  political discrimination. For example, Valedón testified that she was given tasks to do by her supervisor such as to run an errand, but that Cruz would decide to send another person. *Valedón dep. p. 66.*  Once Cruz,

introduced her with another secretary whom Cruz described "as a true employee".  This Valedón considered had derogatory implications about her work.  Valedón also testified that in another occasion Cruz took her to a meeting solely to answer the phone when there were others there who could have answered the phone. *Id. at p. 54*.  Valedón also alleges she was subjected to certain politically motivated remarks.  Specifically she recalled that if a person was dressed in red, the distinctive color for the PDP, Cruz will comment "Look how pretty you're dressed here today". *Id. at p. 71*.

Valedón alludes to the first floor employees as being members of the PDP and those are the ones to which Cruz alluded as "the real employees".  Valedón testified that she is treated differently because her work area is located on the second flood.  *Id. at p. 66*.  However, the record also reflects there are other employees affiliated to the PDP who also work in the second floor.  Valedón also alluded to office workers, who are not defendants, who were told not to gather on the second floor, because the people there were NPP members.  *Id. at p. 73*. She testified that she was not invited to birthday parties held on the first floor and that she was told by Tania Nuñez that PDP members were not to gather with NPP members. *Valedón dep. p. 73*.  Consistent with the discriminatory conduct,  the water bottle was placed on the first floor, even though Valedón suggested to Cruz that it be placed on the second floor.  *Id. at pp. 19-23*.  Finally, Valedón testified that during secretaries week there was a celebration at the office during which Cruz did not allow Valedón to be serenaded by musicians.  Valedón narrated that on said occasion when the musicians approached her Cruz said "no" and then took them towards the other secretaries first. *Valedón dep. p. 30*.

Valedón testified that persons in her office affiliated with the PDP received office equipment, while she did not. *Valedón dep. pp. 5-8*.  Valedón required a special chair, because of a physical ailment, but Cruz did not address her request.  Rather he ordered office equipment for which there was no imminent necessity and upon its arrival it was distributed to first floor personnel.  *Id. at pp. 59, 61*.  Valedón asserted she needed special equipment due to a medical condition and she know that Jovet had requested it for immediate arrival. *Valedón dep. p. 59*.

New furniture arrived for Cruz, but Valedón did not receive her special chair. *Id. at p. 60.* She eventually received it from the State Insurance Fund pursuant to the request of her agency (ADT). *Id. at pp. 60-61*.


Valedón testified that Cruz decreased her job duties. When providing details on this regards, she explained that Cruz had designated and placed an individual, not from the agency, to deal with certain confidential areas (*Valedón dep. p. 50)* but subsequently, Valedón conceded that Cruz had the discretion to appoint someone to exercise such functions. *Id.*

Valedón testified that she brought suit against Cruz because he did not provide her with office and orthopedic equipment and that he only addressed her, to scold her. *Valedón dep. p. 72*. During her deposition testimony, Valedón admitted she has never spoken to Cruz about politics and clarified she brought suit against him because he did not timely provide for the equipment she had requested and his statements to the effect she was not a good secretary while others were.

Valedón admitted she does not know Acevedo's political affiliation and has never spoken to him. Valedón bases her claim against him because she believes he holds a trust position. In the same vein Valedón testified that she sued Crespo because she also holds a trust position. Similarly, she does not know her. *Valedón dep. p. 71*. Likewise, Crespo testified that she does not know Valedón. Valedón does not know Crespo's political affiliation and has only been introduced to her.

During his deposition Acevedo was questioned about trust employees and their political affiliation. He stated that the political element should not be considered in government situations. Nonetheless in positions entrusted with the authority to impart public policy, he opined that the most logical thing would be to appoint someone to the position with the qualifications and same political ideology, but that would not disqualify or attribute assets to any person. *Acevedo dep. pp. 11-12.*

**Analysis**

The Defendants move for summary judgment asserting that the employed plaintiffs were not subjected to any adverse employment action, and that even if the Court considers that there were adverse employment actions, plaintiffs have failed to establish that said actions were politically motivated.  In that regard, the Defendants contend that plaintiffs have failed to establish a *prima facie* case of political discrimination.  Defendants also argue that Santiago's political discrimination claim is time barred.  They further argue that the plaintiff spouses and their Conjugal Partnerships have no standing to raise a § 1983 claim.  Defendants also move for dismissal of those claims brought against them in their official capacity.     Defendants further contend that they

are entitled to qualified immunity.   Finally, Defendants ask for dismissal of the supplemental state claims raised against them (**Docket No. 51**).

Plaintiffs, of course, oppose the Motion for Summary Judgment.  They argue that they were subjected to a hostile environment in their respective work places, and were subjected to inferior working conditions, substantially lower benefits, demotions, assignments of duties of lesser importance, discriminatory treatment in their application for new positions, and illegal and discriminatory disciplinary actions.   In setting forth those allegations Plaintiffs appear to imply that they have made a *prima facie* case of political discrimination.  Santiago asserts that his claim is not time barred arguing that it is based upon continued violations.  Plaintiffs made no specific response and did not address many of the issues raised by Defendants including arguments such as: lack of standing, official capacity, qualified immunity, and dismissal of supplemental state claims.

## A.    Legal Standard

A motion for summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Wolf v. Gruntal & Co.*, 45 F.3d 524, 527 (1st Cir. 1995); *National Amusements, Inc., v. Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).  The First Circuit has

clearly delineated the manner in which Federal Rule of Civil Procedure 56, functions as follows.

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists. As to issues on which the summary judgment target bears the ultimate burden of proof, the non-movant cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party. *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir. 1995) (citations and some internal punctuation marks omitted).

The Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). While carrying out that task, the Court safely can ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Intern., Inc.*, 229 F.3d 49, 53 (1st Cir. 2000) (quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

Once a movant has made a preliminary showing that there exists no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law, the nonmovant bears the burden to show the existence of a genuine material issue, *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996), and must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e).    The nonmovant cannot meet this burden by merely submitting allegations or denial of the pleadings.  Fed. R. Civ. P. 56(e).  Nor can the nonmoving party avoid

summary judgment by relying on conclusory allegations, improbable inferences, unsupported speculation, or "[b]rash conjecture coupled with the earnest hope that something concrete will materialize." *J. Geils Band Employee Benefit Plan,* 78 F.3d at 1251 (quoting *Dow v. United Bhd. of Carpenters*, 1 F.3d 56, 58 (1st Cir. 1993)).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted). "If no genuine issue of material fact emerges from this perscrutation, then the case may be ripe for summary adjudication."  *Suárez,* 229 F.3d at 53.

### A.     42 U.S.C. § 1983

The majority of the claims are brought by plaintiffs as a civil rights action pursuant to 42 U.S.C. § 1983.   Section 1983  provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

As is well established, § 1983 creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 271 (1994). Therefore, to state a cause of action under 42 U.S.C. § 1983, Plaintiffs must allege that: (1) the Defendants acted under color of state law; and, 2) their actions deprived Plaintiffs of a constitutional right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

### A.     Limitation Period

The undersigned first addresses the Defendants' averment that Santiago's claim is time-barred.  The Defendants argue that the facts show that Santiago had knowledge of his alleged discrimination by at least November 5, 2001, when he first sent a letter to Fuentes inquiring whether the assignment of veterans preference points had been credited and that although he was determined an eligible candidate for the position of Manager, yet during the evaluation process

he was not interviewed.   According to Defendants this is when the limitation period began to run, yet Santiago did not file the instant complaint until December 5, 2002, approximately one month after the expiration of the limitation period.   Hence, Defendants argue that Santiago's claim is barred by the one year limitation period.

Plaintiffs respond that Santiago's claim is not based on a mere event, but is based on the continuance of discriminatory actions which effects are not attached to a specific date, but otherwise have continued throughout time.  The Defendants reply that Santiago's only assertion of a discriminatory act against him is the allegation that due to political discrimination he was not appointed to the Assistant Manager or Manager position.  Defendants further argue that Santiago failed to identify any continuing discriminatory acts that occurred within the limitation time period.

When cases are brought pursuant to 42 U.S.C. § 1983, the Court applies the forum state's statute of limitations period for personal injury actions – in Puerto Rico it is one year. *Rivera-Muriente v. Agosto- Alicea,* 959 F.2d 349, 353 (1st Cir. 1992).   Federal law is applied to determine when the limitations period begins to accrue. *Id.*  In most instances, the date of accrual occurs "when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Id.*

"It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." *Morris v. Government Dev. Bank of P.R.,* 27 F.3d 746, 750 (1st Cir. 1994) (citing *Delaware State Coll. v. Ricks,* 449 U.S. 250, 261 (1980)).   A plaintiff does not need to know of the discriminatory animus behind the adverse employment action for the statute of limitations to begin to run. *Morris,* 27 F.3d at 749-750.   Furthermore, a plaintiff does not need to know all of the facts supporting his claim before the statute of limitations may commence. *Id.* at 750 (internal citations omitted).   Rather, unambiguous and authoritative notice of the adverse employment action is all that is required to trigger the limitations period.   *See Rivera-Muriente v. Agosto-Alicea,* 959 F.2d 349, 353 (1st Cir. 1992) (§ 1983 case).

To establish a continuing violation, Santiago "must allege that a discriminatory act

occurred or that a discriminatory policy existed within the period prescribed by the statute." *Id.* There are two kinds of continuing violations, serial violations and systematic violations.   Serial violations consist of a series of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate actionable wrong.   *See Jensen v. Frank,* 912 F.2d 517, 522 (1st Cir. 1990).  Plaintiff must show that at least one discriminatory act occurred within the limitations period to establish a serial violation. *See Muñiz-Cabrera v. Ruíz,* 23 F.3d 607,  610 (1st Cir. 1994).   It is not enough to show that plaintiff is merely feeling the effects of some earlier discrimination action.  *Id.*  To establish a systematic violation, plaintiff must show that he was harmed by a discriminatory policy or practice, and that such policy or practice continues into the limitations period.  *Id.* Plaintiff is not required to show any particular discriminatory act within the limitations period under a systematic violation theory.  *Jensen,* 912 F.2d at 523.

In order to survive summary judgment, Santiago must point to evidence showing that a series of discriminatory acts continued into the one-year limitations period, or he must demonstrate the existence of a discriminatory policy within the limitations period.  Santiago has done neither.  Indeed, in the opposition to the motion for  summary judgment Plaintiffs refer to alleged acts of discrimination taken against plaintiffs Valedón, Campos and Vélez and make absolutely no mention of Santiago.  Further, the undersigned notes that the allegations in the complaint raised by Santiago speak to one act of alleged discrimination  – that is, due to his political affiliation he was unable to compete for the ADT Manager position.  There is not even a hint of a continuing violation.  More so, there is no doubt that the  facts in this case indicate that Santiago was aware of the alleged political discrimination by at least November 5, 2001, the date he sent his first inquiry letter to Fuentes.  Thus, Santiago's factual allegations simply do not support a continuing violation theory.

At least from the standpoint of his non-selection as Manager in 2001, the alleged discriminatory acts or discriminatory policies do not fall within the one year period prescribed by the statute.  More so, a continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination.

*See Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1018 (1st Cir. 1979); *see also Reyes-García v. Municipality of Guaynabo*, 177 F.Supp.2d 116 (D.P.R. 2001).

At the very latest, the accrual date occurred on November 5, 2001, the date of Santiago's letter to Fuentes. Given the fact that the complaint was filed a month after the expiration of the limitation period, said claim is barred by the one-year statute of limitations.

**Therefore, it is RECOMMENDED that the Motion for Summary Judgment be GRANTED on the basis that the § 1983 claims brought by Santiago are time barred.**

**D.              Political Discrimination**

The Court addresses the political discrimination only as to Campos, Valedón and Vélez inasmuch as the claims raised by Santiago are time barred. The Defendants argue that Plaintiffs were not subjected to adverse employment actions which were politically motivated. More so, Defendants argue that Campos and Valedón's main allegation of adverse employment action is based on the fact that they were not granted career appointments within the appropriate time period cannot lie. In this regard Defendants contend that Campos and Valedón had no property interest over these regular appointments. As to Vélez, Defendants posit that he did not undergo an adverse employment action because he had no property right over the possible appointment as Assistant Manager or Manager. Alternatively, Defendants argue that even if this Court were to determine that these plaintiff employees suffered an adverse employment action, they have failed to establish a *prima facie* case of political discrimination.

Initially the undersigned notes that the complaint does not contain a claim for a due process violation, but alleges political discrimination in violation of their First Amendment Rights under the United States Constitution[3]. It is generally in the due process context that the issue of a property interest in employment is a relevant inquiry. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

---

[3]The Complaint alleges that Plaintiffs' Fourteenth Amendment Rights were also violated, but it contains no allegations of due process violations.

The First Amendment to the United States Constitution protects both political expression and political association. *Elrod v. Burns*, 427 U.S. 347, 356-57 (1976) (quoting *Buckley v. Valeo*, 424 U.S. 1, 11 (1976)).  The right of political association includes the right to associate with the political party of one's choice.  *Elrod v. Burns*, 427 U.S. at 357 (quoting *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973)). Also party affiliation may be an acceptable requirement for some types of government employment, in order to promote the State's vital interest in maintaining governmental effectiveness and efficiency.  *Branti v. Finkel*, 445 U.S. 507, 517 (1980).  As such, if an employee's

political beliefs would interfere with the discharge of his public duties, he may be lawfully removed from his position.  *Id.*

In the political discrimination context the Supreme Court extended First Amendment protection to "promotions, transfers, and recalls after layoff."  *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 (1990).   Indeed, the Court suggested that any adverse action, no matter how minor, violates the First Amendment if it is in retaliation for an employee's exercise of First Amendment Rights.  *Id*. at 76. n. 8.  The Supreme Court was concerned with "deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy.  *Id.* at 75.  Under this reasoning the First Circuit Court of Appeals recognizes that actions less than dismissal can constitute political discrimination when a plaintiff's "work situation is unreasonably inferior to the norm for the position".  *See Agosto de Feliciano v. Aponte-Roque*, 889 F.2d 1209, 1218 (1st Cir. 1989).

Defendants argue that summary judgment is appropriate as Plaintiffs were not deprived of a protected right.  They contend that Campos, Valedón and Vélez failed to establish they suffered any adverse employment action.  In the alternative, Defendants argue that if there was an adverse action it had no causal connection to Plaintiffs' political beliefs.

### 1.     Respondeat Superior/Personal Involvement

Before addressing the issue of political discrimination, the undersigned must first determine if there is sufficient personal involvement on behalf of the Defendants for liability to ensue.

Defendants argue that Plaintiffs could point to no specific actions by Defendants which resulted in the deprivation of their federally protected rights.  Defendants note that there is no respondeat superior liability in a § 1983 action, and that when Plaintiffs were asked about specific discriminatory actions, they were able only to make reference to hallway comments or actions by other employees who are not defendants in this case.  Similarly as with the issue of the statute of limitation, Plaintiffs made no argument and did not address the issue of the respondeat superior or the personal involvement of the Defendants.

Under § 1983, liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. *See Kostka v. Hogg*, 560 F.2d 37, 40 (1st Cir. 1977).  Personal involvement requires a showing of a causal connection or affirmative link between the specific defendant and plaintiff's federal rights deprivation. *See Lipsett v. University of Puerto Rico*, 864 F.2d 881, 902 (1st Cir. 1988); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir. 1982).  This may consist of direct acts by the defendant, certain acts performed at defendant's direction, or knowledge and consent. *Rodríguez-Vázquez v. Cintrón-Rodríguez*, 160 F.Supp.2d 204, 209 (D.P.R. 2001) (citations omitted).  Each defendant individually responds for his own acts and omissions in the light of his own duties. *See  Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362, 370 (1976).

As there is no respondeat superior liability under § 1983, liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. *See Kostka v. Hogg*, 560 F.2d 37, 40 (1st Cir. 1977).  Indeed, in actions brought pursuant to 42 U.S.C. §1983, *respondeat superior* cannot serve as a basis to hold supervisors responsible for the misdeeds of their subordinates.  *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000).  However, a supervisory employee may be found liable if he "possessed either the state of mind for the particular constitutional violation or deliberate indifference, and. . .played a causal role in plaintiff's constitutional deprivation." *Id.* (citing 1 Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation: The Law of Section 1983, §3:91 at 3-241 (4th ed. 1999)).  A superior Officer may be

found liable under § 1983 on the basis of his own acts or omissions. *See Bowen v. Manchester*, 966 F.2d 13, 20 (1st Cir. 1992); *Manarite v. Springfield*, 957 F.2d 953, 957 (1st Cir. 1992). Accordingly, a supervisor may be held liable for what he does or fails to do if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Manarite*, 957 F.2d at 957.

To succeed on a supervisory liability claim, a plaintiff not only must show deliberate indifference or its equivalent, but also must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission. *See Bowen*, 966 F.2d at 20; *Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984). This causation requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights; for example, a sufficient casual nexus may be found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct. *See, e.g.,Lipsett v. University of Puerto Rico*, 864 F.2d 881, 902-03 (1st Cir. 1988). Consequently, deliberate indifference to violations of constitutional rights can forge the necessary linkage between the acts or omissions of supervisory personnel and the misconduct of their subordinates. *See Gaudreault v. Salem*, 923 F.2d 203, 208 (1st Cir.1990).

With regard to the claims that Campos and Valedón bring against Acevedo, the undersigned finds there is no genuine issue of material fact as to Acevedo's personal involvement or lack thereof.  Nor is there a genuine issue of material fact as to whether Acevedo knew of, overtly or tacitly approved of, or purposely disregarded the alleged discriminatory conduct. In their opposition to the motion for summary judgment the plaintiffs rely upon the deposition testimony of Acevedo regarding the propriety of appointing individuals with the same political ideology. This testimony, however, does not speak to the positions of Campos and Valedón.  More so, his testimony speaks in terms of trust employees and generalities.  More important is that Campos never complained directly to Acevedo.  Also she acknowledges that she brought suit against him because she believes that the actions carried out by his subordinates were his responsibility. Similarly, Valedón brought suit against Acevedo because she believes that he holds a trust position. More so, Valedón does not know Acevedo's political affiliation and has never spoken to him.

The facts do not show that Acevedo had any direct personal involvement in the actions of which Campos and Valedón complain.  Additionally, these two plaintiffs point to no facts that forge the necessary linkage between the acts or omissions of supervisory personnel and the misconduct of their subordinates.  Specifically, Campos, rather than rely on facts, submits a suit based on the fact he "believes" that the actions carried out Acevedo's subordinates were his responsibility.  Campos and Valedón clearly seek to hold Acevedo liable on the basis of respondeat superior, something that is not viable in a § 1983 action.  **Accordingly, it is RECOMMENDED that the Motion for Summary Judgment be GRANTED in Acevedo's behalf as to the claims brought against him by Campos and Valedón.**

Valedón claims against Crespo also fail.  Valedón testified that she brought suit against Crespo because she holds a trust position with the government.  Notably, Valedón brought forth no other factual allegation against Crespo.  It is not disputed that Crespo held a supervisory position with the Human Resources of the ADT, however;  there is nothing to indicate that Crespo was aware of Valedón's situation and the fact that she was not made a regular employee immediately subsequent to the expiration of her probation period.  Indeed, Valedón and Crespo do not know each other. It is evident that Crespo had no personal involvement in the allegations of discrimination raised by Valedón.  More so, Valedón set forth no facts to establish that Crespo knew of, overtly or tacitly approved of, or purposely disregarded the alleged discriminatory conduct.

As with Acevedo, Valedón seeks to hold Crespo liable on the theory of respondeat superior, something that is not viable in a § 1983 action.  **Therefore, it is RECOMMENDED that the Motion for Summary Judgment be GRANTED in Crespo's behalf as to the claims brought against her by Valedón.**

Finally, the undersigned finds that summary judgment is appropriate as to the claims leveled by Vélez against Cruz.  Vélez testified that he does not know Cruz and has never spoken to him.  Clearly there is no genuine issue of material fact as to the lack of personal involvement of Cruz in relation to Vélez's claims.  **Hence, it is RECOMMENDED that the Motion for**

**Summary Judgment be GRANTED in Cruz's behalf as to the claims brought against him by Vélez.**

As to the remaining defendant, Jesús Roena, the record simply does not reflect any personal involvement of Roena in any of the alleged discriminatory actions.   He is <u>never</u> mentioned by any Plaintiff.    Of note is that Plaintiffs point to no evidence demonstrating his involvement in their allegations of political discrimination.

**Therefore, it is RECOMMENDED that the motion for summary judgment  be GRANTED on all claims brought against defendant Roena. It is FURTHER RECOMMENDED that summary judgment be GRANTED on Acevedo's behalf as to the claims brought against him by Campos and Valedón; that the Motion for Summary Judgment be GRANTED in Crespo's behalf as to the claims brought against her by Valedón; and that the Motion for Summary Judgment be GRANTED in Cruz's behalf as to the claims brought against him by Vélez.**

### 2.    *Prima Facie* Case

Having determined that certain Defendants lack sufficient personal involvement to impose liability to the claims brought against them, the undersigned now determines whether Plaintiffs have presented sufficient evidence of political discrimination on the remaining claims to survive a motion for summary judgment.   The Defendants argue that there is no *prima facie* case of political discrimination.    They contend that Plaintiffs' allegations of political discrimination are grounded on conclusory and unsupported allegations,  and only upon one fact – that the Plaintiffs belong to the rival political party of the Defendants.

Defendants argue that Vélez cannot establish that the selection process for the appointment of Assistant Manager and Manager was politically motivated or that he was more qualified for the position than the persons appointed.   Defendants argue that Campos and Valedón have not established that they were treated differently because of their political affiliation.   The also argue that the facts show that all secretaries were required to handle the telephone exchange and that all employees in the ADT Coamo Office lacked office equipment.

Defendants further argue that during their depositions the Plaintiffs could not recite any specific facts supporting the existence of a politically discriminatory animus.  They could point to no specific actions by Defendants which resulted in the deprivation of their federally protected rights.  More so, they argue that Plaintiffs admit to having no personal knowledge of Defendants' political affiliation and further admit they have had little contact and/or communications with Defendants.  The Defendants note that when Plaintiffs were queried about specific discriminatory actions, Plaintiffs made reference only to hallway comments or actions by other employees who are not Defendants in this case.  They argue that Plaintiffs failed to establish a connection between

these other employees and the Defendants' own actions or that the Defendants had knowledge of the alleged actions of the other employees.

In *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), the Court established a two-part burden-shifting analysis for evaluating free speech claims.  This analysis has also been applied in the political discrimination context.  *See Mercado-Alicia v. Puerto Rico Tourism Co.,* 396 F.3d 46 (1st Cir. 2005); *Rodríguez-Ríos v. Cordero*, 138 F.3d 22, 24 (1st Cir. 1998); *Acevedo-Díaz v. Aponte*, 1 F.3d 62, 67 (1st Cir. 1993).  To establish a *prima facie* case of political discrimination, Plaintiffs must produce sufficient evidence in the record that would allow a  rational factfinder to find that their political affiliation was a substantial or motivating factor behind the adverse employment decision.  *See Báez-Cruz v. Municipality of Comerio*, 140 F.3d 24, 28 (1st Cir. 1998).   If he does so, then the defendant is given the opportunity to establish that it would have taken the same action regardless of the plaintiff's political beliefs. *See* 429 U.S. at 287; *Mercado-Alicia,* 396 F.3d at 51.  "[I]f a plaintiff does not produce evidence sufficient to allow a reasonable inference that political discrimination was a substantial or motivating factor in the challenged employment action, [the Court] need not analyze defendant's *Mt. Healthy* defense." *Id.* at pp. 51-52 (citations omitted).

The Plaintiffs bear the initial burden of showing that political discrimination was a substantial or motivating factor in the Defendants' employment decisions.  In meeting this burden,

Plaintiffs do not need to produce direct evidence of a politically-based discriminatory animus inasmuch as a discriminatory animus may be established with circumstantial evidence alone. *Pagán-Cuebas v, Vera-Monroig*, 91 F.Supp.2d 464,  474 (D.P.R. 2000); *see also Acosta-Orozco v. Rodríguez-de-Rivera,* 132 F.3d 97, 101-02 (1st Cir. 1997)*;  Acevedo-Díaz v. Aponte,* 1 F.3d 62, 69 (1st Cir. 1993).  The operative question in this kind of scenario is "does the circumstantial evidence taken as a whole, give rise to a plausible inference of discriminatory animus which, ultimately possesses enough convictive force to persuade a rational fact-finder that the defendants' conduct was politically motivated?"  *Anthony v. Sundlun*, 952 F. 2d 603, 606 (1st Cir. 1991).

A highly charged political atmosphere whereby one political party takes over power from another, combined with the fact that the plaintiff and defendants are of opposing parties may be probative of a discriminatory animus.  *See Id.*    Other factors that have been found to show discriminatory animus include the fact that the plaintiff was a known member of the opposing political party, that the position was then filled by a member of the opposite political party, and that everyone of the plaintiff's party was demoted after a change in Office.  *Flores-Camilo v. Alvarez-Ramírez*, 283 F.Supp.2d 440, 448 (D.P.R.  2003) [(citing *Rodríguez-Pinto v. Tirado-Delgado*, 982 F.2d 34, 40 (1st Cir. 1993); *Rivera-Ruíz v. González-Rivera*, 983 F.2d 332, 335 (1st Cir. 1993); *Acevedo-García v. Vera Monroig*, 30 F.Supp.2d 141 (D.P.R. 1998) *aff'd,* 204 F.3d 1 (1st Cir. 2000))].

The evidence before the Court is that in 2000 there was a change in political power from the NPP administration to the PDP administration.  Also, viewing the evidence in the light most favorable to the Plaintiffs, the non-moving parties,  Defendants appear to have been aware of their political affiliation of Campos and Valedón.  In question is Vélez's political affiliation[4].

The undersigned now turns to other evidence proffered to determine if Plaintiffs have met their initial burden on summary judgment.  **Campos** argues that she is a life-long active member

_____

[4]He testified that he is affiliated with the NPP, but both Crespo and Acevedo testified that Vélez had told them he was affiliated with the PDP.

of the NPP and that her political beliefs are not a surprise to the counterparts in her agency.  The facts are that she was appointed as an Office Systems Technician, effective September 1, 2000. She was not made a regular status employee until June 6, 2002, long after the expiration of her probationary period.  However, her regular employee status was made retroactive to March 7, 2001.  Campos addressed the issue of her probation status with Crespo and was told that her file was under investigation. Campos testified that she believed that the files under investigation belonged to NPP members and not PDP members all as a result of political discrimination. Other than her "belief" Campos provides no facts to support her testimony.

         In an attempt to bolster her claim Campos testified that once Meléndez arrived at the Guayama Office, her job duties were diminished.  She also testified that Meléndez made a distinction between Campos and other employees.  This is irrelevant in light of the fact that Meléndez is not a party defendant in this action.

         It is true that Campos was transferred to the Coamo Office.  She testified that her office lacked essential office equipment.   There is evidence that at the Coamo Office PDP employees received equipment and furniture before NPP employees. Campos was not trained and her job tasks were allegedly assigned to others.  Campos told Jovet and Cruz that she was not being given any specific tasks to perform and a meeting was held among Jovet, Cruz, Dilia and Campos.  Dilia explained to Campos that she was not assigned duties because she did not go to the technicians to request it be assigned.   A proposal was made by Jovet, Campos' supervisor, to re-assign her to a different area, but the offering was rejected by Cruz.   In Campos' opinion this indicated that she was not considered an employee of the agency.  Cruz and Campos also discussed Campos' other concern of feeling alienated by other employees.   Campos also testified that she was barred from social activities by her fellow employees, none of whom are named Defendants.  More so, no facts were provided supporting an allegation that these fellow employees were told or ever instructed by any of the defendants to ostracize Campos.

         Nonetheless, in evaluating the allegations that Campos brings against Cruz the undersigned

finds that Campos has proffered sufficient evidence to defeat summary judgment. The most compelling evidence is that Campos was treated differently from employees with a PDP bent. She was not given appropriate office equipment and was ostracized by her fellow employees. Also her job duties were diminished. More so, Cruz was aware of Campos' complaints regarding her lack of work and the way other employees treated her. While the situation was addressed, it does not appear that steps were taken to remedy it, or if they were taken, wether the discriminatory action ceased.

Based upon the foregoing evidence, it is considered Campos has set forth sufficient evidence to sustain her initial burden that Cruz's employment decisions were based upon improper and discriminatory motives. The undersigned further finds that Cruz has not demonstrated that regardless of political affiliation the same decisions would have been made with regard to Campos. **Therefore, it is RECOMMENDED that the Motion for Summary Judgment be DENIED as to the claims of political discrimination brought by Campos against defendant Cruz.**

Campos also proffered in sufficient evidence with regard to her claims against Crespo. Campos was appointed as an Office Systems Technician, effective September 1, 2000, but was not made a regular status employee until June 6, 2002, long after the expiration of her probationary period. However, her regular employee status was made retroactive to March 7, 2001. Campos addressed the issue of her probation status with Crespo and was told that her file was "under investigation". Campos testified that she believed that the files under investigation belonged to NPP members and not PDP members all as a result of political discrimination. Other than her "belief" Campos provides no facts to support her allegations.

Crespo, however, has put forth sufficient facts and evidence to support her burden that regardless of Campos' political affiliation, there would have been a delay in granting her regular employee status[5]. According to Crespo, the Human Resources Department at the ADT was "a

---

[5]Although the undersigned determined that Crespo had no liability under the theory of respondeat superior and had no personal involvement as to the claims of Valedón, the same analysis set forth for Campos' claims against

mess" and it was necessary to employ a consultant to aid the ADT in obtaining information for the roster of employees, but the updating was difficult. There were many files in which persons appeared in a probationary period. There is no evidence that these files belonged solely to adherents of the NPP. Campos testified that only NPP files were investigated, but provided no facts to support such allegation. Once it was discovered that the changes in employee's status from probationary to regular had not been made, technicians were assigned to work on the probationary employee's files and a task force was established to deal with and correct the employees' classification.

The undersigned finds this evidence is sufficient to demonstrate that regardless of political affiliation, Crespo would have made the same decisions in the same time frame when changing an employee's status from probationary to regular. Crespo has provided nothing to the Court to show that her employee status would have been changed sooner "but for" her political affiliation.

**Therefore, it is RECOMMENDED that the Motion for Summary Judgment be GRANTED on the claims made by Campos against defendant Crespo.**

We move now to consider Valedón's claim of political discrimination. Valedón has been an NPP supporter for most of her life. Valedón testified that persons in her office affiliated with the PDP received office equipment and furniture, while she did not. Valedón required a special chair, but Cruz did not address properly the request and it was not provided to her. Plaintiff ultimately received the chair from the SIF but not through her agency.

Valedón also asserts that Personnel on the first floor, which is a haven for PDP employees, received the new office equipment immediately upon it being received, rather than it being assigned where there was an immediate need. As an example on how first floor employees received preferential treatment, Valedón alluded to the fact that the water bottle was placed on the first floor, even though Valedón suggested to Cruz that it be placed on the second floor. Also, Cruz continuously suggested that the employees on the first floor were the "real employees".

---

Crespo holds true for the claims that Valedón brought against Crespo. More so, Valedón claims of political discrimination must fail inasmuch as Valedón admitted she does not know Crespo's political affiliation.

It is also asserted that Cruz decreased Valedón's job duties. She was given tasks to do by her supervisor such as running errands, but Cruz would later order another person to perform the task. Also, Cruz took Valedón to a meeting solely to answer the phone when there were others there who could have answered the phone. If a person is dressed in red, the color for the PDP, Cruz usually made comments praising it by saying: "Look how pretty you're dressed here today". During secretaries week Cruz did not allow Valedón to be serenaded by musicians, and when the musicians approached she impeded it, by saying "no" and took them towards the other secretaries first.

As to the allegations brought by Valedón against Cruz the undersigned finds that Valedón has proffered sufficient evidence to defeat summary judgment. Taken in the light most favorable to Valedón, the evidence is that because Valedón is affiliated with the NPP, Cruz treated her differently from PDP employees. Valedón has set forth sufficient evidence to sustain her initial burden that Cruz's employment decisions were based upon improper and discriminatory motives. More important is that Cruz has not demonstrated that regardless of political considerations, the same decisions would have been made with regard to Valedón. **Therefore, it is RECOMMENDED that the Motion for Summary Judgment be DENIED as to the claims of political discrimination brought by Valedón against Cruz.**

**Plaintiff Vélez** is a member of the NPP, but has told both Crespo and Acevedo that he is a member of the PDP. For over a year he held, on a temporary basis the position of Assistant Manager in the Guayama Office. When vacancies were announced for the Assistant Manager and Manager's position in the Guayama Office, Vélez was told that he was eligible for the Manager position, but when he reported for the interview he was told that he was no longer eligible for the Manager position and that he would have to interview for the position of Assistant Manager. Vélez contacted Crespo and she indicated there had been a mistake, that nothing could be done. After that Vélez did not challenge the selection and appointment process for the Manager position. Ciprián Meléndez was ultimately selected for the Manager position, and Vélez did not contest the selection process of Meléndez. Vélez does not know Meléndez's education or experience, but

knows that he is a member of the PDP.

Vélez was interviewed for the Assistant Manager position on November 26, 2001. Vélez was interviewed by the four regional managers, Crespo and Acevedo. Crespo and Acevedo did not ask him any questions. Aminda Pérez was selected for the position. Vélez knows that Pérez is from outside the agency, but knows nothing of her education, work experience or political affiliation.

Vélez inquired by letter and telephone from Crespo regarding the final score he received for the Assistant Manager and Manager position. At the time he received no definite response.

Vélez does not agree with the appointment of Pérez as Assistant Manager, because she came from outside the agency, Vélez was already holding the position on a temporary basis and was fully eligible for the position. Thus, Vélez understands he was better qualified. There was political tension in the Office and PDP sympathizers told Vélez that he was on his way out.

The basis for Vélez's claim against Crespo is that she gave him an unfair classification during the evaluation of his application for the Assistant Manager and Manager position. The basis for Vélez's claim against Acevedo is that he was involved in the selection process for the assistant manager position and during the interview process he did not ask Vélez any questions. Additionally, Acevedo was the individual who told Vélez that another person had been selected and that Vélez would have to leave his office.

There are real problems with Vélez's claim of political discrimination, the most glaring being that when asking for assistance in obtaining the Assistant Manager position he told both, Acevedo and Crespo that he is a member of the PDP. While Vélez professes to be a member of the NPP, it is undisputed that he dispersed the information of his affinity to the PDP to both of these defendants. Given that Acevedo and Crespo were told directly by Vélez that he was a member of the PDP, it is considered that Vélez has failed to produce sufficient evidence to allow a rational factfinder to determine that any adverse employment decision towards him was due to his political affiliation with the NPP. Additionally, even if the undersigned were to overlook Vélez's statements

to Acevedo and Crespo, it needs to be noted that Vélez testified, and remains undisputed that he did not know the political affiliation of the person who was appointed to the assistant manager position.  Hence, it is unknown if the position was assumed by a member of the PDP.  Finally, Vélez did not internally or administratively protest Meléndez's appointment to the Manager's position.

Even taking the evidence in the light most favorable to Vélez, he has failed to present a *prima facie* case of political discrimination.  **Accordingly, it is RECOMMENDED that the motion for summary judgment on claims brought by Vélez be GRANTED**.

### E.   Official Capacity - Eleventh Amendment

Defendants move for summary judgment arguing that plaintiffs are barred from obtaining monetary damages, declaratory and injunction relief and back pay from the Defendants in their official capacity.  Plaintiffs' opposition contains no response to this issue, thus, defendants' allegations remain unopposed.

The Eleventh Amendment bars suits against states for money damages unless the state has consented. *See Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority*, 991 F.2d 935, 938 (1st Cir.1993). Suits filed against state officials in their official capacity are deemed actions against the state, regardless of whether the state is a named party to the suit, since the real party in interest is the State and not the official. *Hafer v. Melo*, 502 U.S. 21 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Even when state officials act under color of state law pursuant to § 1983, the Eleventh Amendment bars monetary claims against them in their official capacity. *Medina-Pérez v. Fajardo,* 257 F.Supp.2d 467, 472 (D.P.R. 2003).

In *Ex Parte Young,* however, the Supreme Court carved out an exception to Eleventh Amendment state immunity that allows federal courts to "enjoin state officials to conform their future conduct to the requirements of federal law," *Quern v. Jordan,* 440 U.S. 332, 337 (1979). *See also Green v. Mansour,* 474 U.S. 64, 68 (1985); *Edelman v. Jordan,* 415 U.S. 651, 664 (1974). The difference between permissible and impermissible relief is "the difference between prospective relief on one hand and retrospective relief on the other." *Quern,* 440 U.S. at 337.

**Based upon the foregoing, it is RECOMMENDED that the Motion for Summary Judgment as to the issue of the Eleventh Amendment and monetary damages and retrospective injunctive relief be GRANTED, and DENIED with respect to prospective injunctive relief.**

### F.    Qualified Immunity

The Defendants argue that they are entitled to qualified immunity for their actions. Defendants contend that the allegations and evidence proffered by plaintiffs do not amount to a violation of a federally protected right, and that even if this Court finds the foregoing to be true, the law was not clearly established at the time of the facts alleged in the complaint. Plaintiffs' opposition contains no response to Defendants' claim that they are entitled to qualified immunity.

Qualified immunity shields government Officers performing discretionary functions from civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right which should have been known. *See Harlow v. Fitzgerald* 457 U.S. 800, 818 (1982); *Ringuette v. City of Fall River,* 146 F.3d 1, 5 (1st Cir. 1998). In deciding whether an officer is entitled to qualified immunity, the Court must first determine whether the officer's alleged conduct violated a constitutional right. *Chavez v. Martínez*, 538 U.S. 760, 766 (2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If not, the officer is entitled to qualified immunity, and [the Court] need not consider whether the asserted right was "clearly established." *Id.*

"Qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier,* 520 U.S. 259, 270 (1997) (citations omitted); *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "A section 1983 plaintiff must allege a violation of a clearly established right secured by the Constitution or some other federal law." *Camilo-Robles v. Hoyos,* 151 F.3d 1, 6 (1st Cir. 1998) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 840 n. 5 (1998)).

A two part inquiry is employed.  If the first part is not met the analysis halts because "there is qualified immunity." *Aponte-Matos v. Toledo-Dávila,* 135 F.3d 182, 187 (1st Cir. 1998). The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation.  However, if there is no constitutional violation, the Court need not consider whether the right was "clearly established." *Chavez v. Martínez*, 538 U.S. at 766.  The second inquiry, if the right was clearly established, is whether a reasonable officer in the same situation would "have understood that the challenged conduct violated that established right." *Aponte-Matos,,* 135 F.3d at 186 (citations omitted); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 812 (1982).  A state actor claiming qualified immunity must do so either under a theory that the asserted constitutional right was not clearly established or under the theory that his conduct satisfies the test of objective legal reasonableness.  *See Camilo-Robles v. Hoyos,* 151 F.3d 1, 5-6 (1st Cir.1998).   *See Roldán-Plumey v.  Cerezo-Suárez*, 115 F.3d 58 (1st Cir. 1997); *Castro-Aponte v. Ligia-Rubero*, 953 F.2d 1429, 1430 (1st Cir. 1992).

The Defendants argue they are entitled to qualified immunity on the basis that there was no violation of  Plaintiffs' federally protected rights.  Alternatively, they argue that under the specific facts of the case the law was not clearly established.   The Court has determined that the complaint states a claim for relief of a constitutional right as to the claims brought by Campos and Valedón against Cruz, but that summary judgment is appropriate as to the Acevedo, Crespo and Roena.  More so, contrary to Defendant's position, the law regarding political discrimination was clearly established at the time of the allegations in the Complaint.  Further,  Plaintiffs have presented evidence that Defendant Cruz may have been politically discriminating against Campos and Valedón on the basis of their affiliation with the NPP.  *See Acevedo-García v. Vera-Monroig*, 204 F.3d 1, 11 (1st Cir. 2000).  **Based on the foregoing, it is RECOMMENDED that the motion for summary judgment on the basis of qualified immunity be DENIED as to Cruz and GRANTED as to Acevedo, Crespo and Roena.**

### G.      Legal Standing

Defendants argue that Socorro Torres-Lebrón and the Conjugal Partnership comprised by

Torres-Lebrón and Santiago, and Norma L. Rodríguez and the Conjugal Partnership comprised by Rodríguez and Vélez lack standing to sue for a civil rights violation.  Plaintiffs' opposition contains no response to Defendants' position assertion regarding  this issue.  As previously discussed,  Local Civil Rule 7.1 provides that "unless . . . the opposing party files written objections thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection."  *L.Cv.R. 6(b).*

The Defendants correctly assert that the aforementioned Plaintiffs lack standing to sue the Defendants under 42 U.S.C. §§  1983, 1985, 1986 and 1988.  First Circuit precedent does not recognize a constitutionally protected interest for family members in the companionship of a victim who suffers a § 1983 violation. *Valdivieso-Ortíz v. Burgos,* 807 F.2d 6 (1st Cir. 1986);  *see also Soto v. Flores,* 103 F.3d 1056, 1061 (1st Cir. 1997);  *Manarite By and Through Manarite v. City of Springfield,* 957 F.2d 953, 960 (1st Cir. 1992);  *Pittsley v. Warish,* 927 F.2d 3, 7 (1st Cir. 1991). "Only the person toward whom the state action was directed, and not those incidentally affected, may  maintain  a  section  1983  claim."   *Guzmán-Rosa  v.  de  Alba,*  671  F.Supp.  882,  883 (D.P.R.1987).  Thus, only Campos, Valedón, Santiago and Vélez have standing to bring damages claim for a §1983 civil rights violation.

**It is therefore RECOMMENDED that the causes of action brought pursuant to §§ 1983, 1985, 1986 and 1988 by Socorro Torres-Lebrón, the Conjugal Partnership comprised by Torres-Lebrón and Santiago, co-plaintiff Norma L. Rodríguez, and the Conjugal Partnership comprised by Rodríguez and Vélez be DISMISSED with prejudice.**

### H.    Supplemental State Claims

Defendants contend that since summary judgment is appropriate as to the federal cause of action brought by plaintiffs, this Court should not exercise supplemental jurisdiction over the Puerto Rico claims also raised in the complaint. Once again, Plaintiffs' opposition contains no response to Defendants' assertions.

As a general rule, where the district court dismisses the federal claims before trial, the court

should dismiss the state law claims without prejudice. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966); *Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995). Here, a portion of the the 42 U.S.C. § 1983 remains viable. Accordingly, it is RECOMMENDED that the motion to dismiss the supplemental state claims be **DENIED**.

## III.   Conclusion

IT IS THEREFORE RECOMMENDED that Defendants' Motion for Summary Judgment (**Docket No. 51**) be **GRANTED in part** and **DENIED in part** as follows:

- that the Motion for Summary Judgment be **GRANTED** as to the § 1983 claims brought by plaintiff Santiago inasmuch as, the same are barred by the applicable limitation period;

- with regard to the issue of respondeat superior and personal involvement; it is RECOMMENDED that the Motion for Summary Judgment be **GRANTED** as to Jesús Roena for all claims brought against him; **GRANTED** as to Faustino Acevedo on the claims brought against him by Campos and Valedón; **GRANTED** as to Myrna Crespo-Saavedra on the claims brought against her by Valedón; and **GRANTED** as to Víctor R. Cruz-Burgos on the claims brought against him by Vélez;

- with regard to the claims of political discrimination; it is further RECOMMENDED that the Motion for Summary Judgment be **DENIED** as to Víctor R. Cruz-Burgos on the claims brought against him by Campos and Valedón; **GRANTED** as to Myrna Crespo-Saavedra on the claims brought against her by Campos and Vélez; and **GRANTED** as to Faustino Acevedo on the claims brought against him by and Vélez;

- that the causes of action under § 1983 be **DISMISSED with prejudice** for lack of legal standing on the claims brought by Socorro Torres-Lebrón, the Conjugal Partnership comprised by David Santiago-Echevarría and Socorro Torres-Lebrón, Norma I. Rodríguez, and the Conjugal Partnership comprised by Angel Vélez-Rivera

and Norma I. Rodríguez;

•     that the motion for summary judgement on the basis of qualified immunity be **DENIED** as to Víctor R. Cruz-Burgos and **GRANTED** as to Faustino Acevedo, Myrna Crespo-Saavedra and Jesús Roena; and

•     that the motion to dismiss the supplemental state claims be **DENIED**.

Should this Report and Recommendation be adopted the remaining federal claim is the §1983 political discrimination claim brought by Carmen D. Campos-Ramos and Daisy Enid Valedón against Victor R. Cruz-Burgos.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

SO RECOMMENDED.

At San Juan, Puerto Rico, on this 15th day of September, 2005.

S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**